[Cite as *Hirtzinger v. Hirtzinger*, 2014-Ohio-3752.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

JODI K. HIRTZINGER     :

              C.A. CASE NO.  2014-CA-34

  Plaintiff-Appellee/Cross-Appellant :

              T.C. NO.  11-DR-116

v.              :

MICHAEL A. HIRTZINGER   : (Civil appeal from Common Pleas
               Court, Domestic Relations)

  Defendant-Appellant/Cross-Appellee

              :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   29th   day of   August  , 2014.

. . . . . . . . . .

JOSEPH M. JUERGENS, Atty. Reg. No. 0024912, 1 South Limestone Street, Suite G, Springfield, Ohio 45502
   Attorney for Plaintiff-Appellee/Cross-Appellant

JAMES E. HEATH, Atty. Reg. No. 0003757, Ronemus & Heath Co., L.P.A., 5 East Columbia Street, Springfield, Ohio 45502
   Attorney for Defendant-Appellant/Cross-Appellee

. . . . . . . . . .

DONOVAN, J.

  **{¶ 1}** Defendant-appellant/cross-appellee Michael A. Hirtzinger appeals from a

decision of the Clark County Court of Common Pleas, Domestic Relations Division, which adopted a decision of the magistrate that ordered that Michael's[1] spousal support obligation to his ex-wife, Plaintiff-appellee/cross-appellant Jodi K. Hirtzinger, be reduced from $1,000.00 per month to $500.00 per month. Michael filed a timely notice of appeal with this Court on March 4, 2014.

{¶ 2} On August 18, 2011, the trial court filed a judgment entry and decree of divorce, thus ending the parties' marriage. Pertinent to the instant appeal, Michael was ordered to pay Jodi $1,000.00 per month in spousal support, effective as of August 16, 2011, for a period of seven years. The divorce decree stated spousal support would terminate upon the death of either party, Jodi's remarriage, or if Jodi were found to be cohabitating with an unrelated adult. Jodi was ordered to pay child support to Michael for the benefit of the parties' minor child.

{¶ 3} On September 7, 2011, Jodi filed a motion to show cause why Michael should not be held in contempt alleging that he had failed to maintain his spousal support obligation. In an entry filed on November 30, 2011, the parties agreed that Michael had a spousal support arrearage of $336.88 after an offset of Jodi's child support arrearage. The entry also stated that Michael would receive a credit of $150.56 per month against his $1,000.00 spousal support obligation until Jodi's child support obligation was terminated. It was also ordered that Michael receive a $100.00 credit against the property equalization order of $2,400.00 (made payable at the rate of $200.00 per month).

{¶ 4} On February 10, 2012, Jodi filed a second contempt motion against Michael

---

[1]For the sake of clarity, we will refer to the parties as "Michael" and "Jodi."

alleging that he failed to comply with the November 30, 2011, order regarding his spousal support obligation and the property equalization provision. On July 25, 2012, Michael filed a motion to modify or terminate his spousal support obligation.

{¶ 5}   In a decision and entry issued on September 18, 2012, the magistrate denied Michael's motion for termination or modification of spousal support and held him in contempt. Michael filed objections to the magistrate's decision which were subsequently overruled by the trial court in a decision issued on November 14, 2012.

{¶ 6}   On April 29, 2013, Michael filed a motion to terminate his spousal support obligation. Jodi filed another contempt motion against Michael alleging that he failed to pay spousal support and the property equalization order. Jodi also filed a motion seeking an increase in her spousal support order. A hearing was held before the magistrate on September 26, 2013, and October 15, 2013. On November 14, 2013, the magistrate issued a decision finding that Jodi had been co-habitating with her boyfriend, Mark Rafferty, since before December 2, 2012. Based on that finding, the magistrate reduced Michael's spousal support obligation by fifty percent to $500.00 per month. The magistrate also held Michael in contempt for failing to pay spousal support and for failing to pay previously ordered attorneys fees and court costs owed to Jodi. Michael filed objections to the magistrate's decision on November 21, 2013. On February 4, 2013, the trial court overruled Michael's objections and adopted the magistrate's decision in its entirety.

{¶ 7}   It is from this decision that Michael now appeals.

{¶ 8}   Michael's sole assignment of error is as follows:

{¶ 9}   "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED

ITS DISCRETION IN MODIFYING RATHER THAN TERMINATING APPELLANT'S SPOUSAL SUPPORT OBLIGATION."

{¶ 10} In his sole assignment, Michael contends that the trial court erred when it merely modified rather than terminated his spousal support obligation upon a finding that Jodi had been cohabitating with Mark Rafferty since before December 2, 2012. Michael argues that the parties' divorce decree specifically states that upon a finding of cohabitation, Jodi would no longer be entitled to spousal support.

{¶ 11} This court has recognized that "[c]ohabitation is a question of fact for the trier of facts, and if the trial court's decision is supported by some competent credible evidence going to the essential elements of the issue, it should not be reversed by the reviewing court as being against the manifest weight of the evidence." *Day v. Day*, 2d Dist. Greene No. 2002-CA-79, 2002-Ohio-6779, citing *Dingey v. Dingey*, 2d Dist. Champaign No. 96-CA-14, 1997 WL 64036 (February 14, 1997).

{¶ 12} In her cross-appeal, Jodi argues that the trial court erred when it found that she and Rafferty were cohabitating. In support of her argument, she relies on our holding in *Perri v. Perri*, 79 Ohio App.3d 845, 608 NE.2d 790 (2d Dist.1992). Therein, we recognized that a primary purpose of a cohabitation provision is "'to prevent a person from receiving support from two sources, each of whom is obligated or voluntarily undertakes the duty of total support.'" *Id*. at 850, quoting *Taylor v. Taylor*, 11 Ohio App.3d 279, 280, 465 N.E.2d 476 (1st Dist.1983). Accordingly, we reasoned that cohabitation is established, and a spousal support obligation is subject to termination, when a paramour voluntarily undertakes a duty of total support or otherwise assumes obligations equivalent to those

arising from a ceremonial marriage. *Id*. at 851-852. Notably, we also recognized in *Perri* that just as a former husband should not be required to pay spousal support when his former wife is totally supported by a paramour, he likewise should not be obligated to pay full spousal support when his former wife uses some of the money to support her paramour rather than to provide for her own sustenance. *Id*.

{¶ 13} The evidence in *Perri* failed to establish that the paramour, John Santy, voluntarily had undertaken a duty of total support of the former wife or that he otherwise had assumed obligations equivalent to those arising from a ceremonial marriage. *Id*. at 851. Indeed, we expressly found that the opposite was true. The former wife, Linda Perri, was at least partially supporting Santy with spousal support obtained from her former husband, Joseph Perri. *Id*. Given that Linda Perri had not obtained support from Santy, we rejected the trial court's finding of cohabitation for purposes of terminating Joseph Perri's support obligation. *Id*. Nevertheless, we held that Joseph Perri was not without recourse. In particular, we reasoned that when "the evidence fails to establish that the paramour has undertaken any obligation of support, much less an obligation of total support," a trial court should consider whether the relationship between the spousal support obligee and the paramour resulted in a "change of circumstances" sufficient to entitle the spousal support obligor to some relief. *Id*. at 852.

{¶ 14} Simply put, the focus should be on whether an appreciable amount of the spousal support paid by the obligor directly benefitted the paramour. *Id*. If so, the proper remedy is not the termination of spousal support, but a reduction in the amount of support to the extent that it directly benefitted the paramour. *Id*.; see also *Day v. Day*, 2d Dist. Greene

No. 2002-CA-79, 2002-Ohio-6779 (reversing trial court's decision terminating appellee husband's spousal support obligation after finding that appellant wife was cohabitating with her paramour; findings made by the magistrate and the trial court did not establish that the paramour undertook any obligation to support appellant wife or that he assumed any marriage-like obligations). However, we note that in neither *Perri* nor *Day* did the court find cohabitation.

{¶ 15} In the instant case, the trial court found that Jodi was cohabitating with Rafferty. The trial court made the following finding regarding cohabitation:

> To this end, this Court finds, from the totality of the credible evidence, that [Jodi] and Mark Rafferty were sharing living expenses and, to this end, [Jodi] received a financial benefit from her relationship with Mr. Rafferty and Mr. Rafferty received a financial benefit as a result of [Michael]'s spousal support payments to [Jodi].

{¶ 16} Upon review, we conclude that the evidence adduced at the hearing established that Jodi and Rafferty were cohabitating together at 1060 Blaine Avenue in Springfield, Ohio. The residence at that address is owned by Rafferty. Deputy Mark Lane testified that he was dispatched to 1060 Blaine Avenue on December 4, 2012. When he arrived at the residence, he spoke with Jodi and Rafferty. Deputy Lane testified that both Rafferty and Jodi stated that they lived at the residence together. Deputy Ronnie Leman was dispatched to 1060 Blaine Avenue on April 22, 2013. Deputy Leman testified that Jodi and Rafferty informed him that they had lived at 1060 Blaine Avenue together for approximately two years. Finally, Deputy Douglas Peterson testified that he was dispatched to 1060 Blaine

Avenue to investigate a disturbance. When Deputy Peterson arrived, he spoke with both Jodi and Rafferty. Deputy Peterson testified that Jodi and Rafferty stated that they lived together at the residence and were engaged to be married.

{¶ 17} We note that Jodi and Rafferty testified at the hearing. Jodi testified that she lived at the residence at 1060 Blaine Avenue alone. Rafferty testified that although he owned the residence, he did not live there. They both denied telling the deputies that they lived at the residence together. Neither the magistrate nor the trial court found any of their testimony to be credible. Unlike the parties in *Perri* or *Day*, the trial court found that Jodi and Rafferty were cohabitating. Michael and Jodi's divorce decree specifically states that if Jodi were found to be cohabitating with another person, who is not a blood relative, then she will no longer be entitled to spousal support. Under these circumstances, the rationale stated in *Perri* regarding modification of a spousal support award where no cohabitation is found is inapplicable. Thus, we find that the trial court erred when it merely modified Michael's spousal support obligation downward to $500.00 per month. Since the trial court found and the record supports a finding that Jodi and Rafferty were cohabitating, the proper decision would have been to terminate Michael's spousal support obligation.

{¶ 18} In light of the foregoing, we conclude that the findings of fact made by the trial court establishing cohabitation between Jodi and Rafferty are not against the manifest weight of the evidence. The trial court, however, erred in the application of the law to the facts. Rather than merely modifying Michael's spousal support obligation downward, the trial court should have terminated the award altogether.

{¶ 19} Michael's sole assignment of error is sustained.

**{¶ 20}** In her cross-appeal, Jodi advances the following sole assignment of error:

**{¶ 21}** "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMANENTLY MODIFIED THE SPOUSAL SUPPORT OF THE PLAINTIFF AFTER RULING THAT PLAINTIFF AND MARK RAFFERTY COHABITATED FOR A BRIEF PERIOD OF TIME."

**{¶ 22}** In light of our disposition with respect to Michael's sole assignment of error, Jodi's cross-assignment of error is rendered moot.

**{¶ 23}** Michael's sole assignment of error having been sustained, this matter is reversed and remanded for proceedings consistent with this opinion.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Joseph M. Juergens
James E. Heath
Hon. Thomas J. Capper